# UNITED STATES DISTRICT COURT

## for the
## DISTRICT OF NEW JERSEY

```
------------------------------------------------------------ )
G.A. by and through his parents, L.A. and A.A.,     )
L.A. and A.A.,                                       )
                                                     )          Civil Action No.
                               Plaintiffs,           )
vs.                                                  )
                                                     )
RIVER VALE BOARD OF EDUCATION,                       )
JOELLE DEGAETANO, CAROL BEIERLE,                     )
NEW JERSEY DEPARTMENT OF                             )
EDUCATION, and STATE OF NEW JERSEY,                  )
                                                     )
                               Defendants.           )
------------------------------------------------------------ )
```

**COMPLAINT**

**&**

**PETITION FOR *DE NOVO* REVIEW PURSUANT TO
THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT
AND THE PARALLEL NEW JERSEY STATUTE**


Dated: June 30, 2011

LORI E. ARONS, ATTORNEY AT LAW

Lori E. Arons, Esq.
One University Plaza, Ste 514
Hackensack, NJ 07601
Loriarons@aol.com
201-388-9533

*Counsel for Plaintiffs* G.A., L.A. and A.A.

## PARTIES

1.   PLAINTIFF, G.A., was born XXXXXXXX, 2007 and is diagnosed with a unilateral mild-moderate-severe sensorineural hearing impairment, ankyloglossia (tongue-tie), speech delay, hypotonia; and is suspected to suffer from anxiety, disfluency (stutter), auditory processing problems and dyspraxia.  G.A. is classified as "preschool disabled" pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1401(3)(A).  At all relevant times, G.A. resided with his parents in River Vale, New Jersey.

2.   PLAINTIFFS, L.A. and A.A., are G.A.'s mother and father, respectively.  At all relevant times, the parents were (and remain) residents of River Vale, New Jersey.

3.   DEFENDANT, RIVER VALE BOARD OF EDUCATION ("RVBOA"), having its principal place of business at 609 Westwood Avenue, River Vale, New Jersey is a local educational agency as that phrase is defined by the IDEA, 20 U.S.C. §1401(15).

4.   DEFENDANT, JOELLE DEGAETANO ("DEGAETANO"), resides in Clifton, New Jersey, is employed by RVBOE, and was at all relevant times the director of special education services.

5.   DEFENDANT, CAROL BEIERLE ("BEIERLE"), resides in River Vale, New Jersey, is employed by RVBOE, and was at all relevant times case manager for G.A.

6.   The NEW JERSEY DEPARTMENT OF EDUCATION ("NJDOE"), having its

principal place of business at 100 River View Plaza, Trenton, New Jersey.

7.   THE STATE OF NEW JERSEY ("NEW JERSEY"), having its principal place of business at New Jersey Department of State, 225 W. State Street, P.O. Box 456, Trenton, New Jersey 08625.

8.   Initials are used throughout this Complaint to preserve the confidentiality of the infant plaintiff in conformity with the privacy provisions of the IDEA, 20 U.S.C. §1417(c), the Family Educational and privacy Rights Act (FERPTA), 20 U.S.C. §1232g, and the Federal Rules of Civil Procedure 5.2(a).

## JURISDICTION AND VENUE

9.   Plaintiffs bring this complaint on appeal from a final decision of the Office of Administrative Law seeking redress from Defendant RVBOE and for other relief for failure to provide a Free and Appropriate Public Education ("FAPE") and for damages pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §1400 *et seq.*; 34 C.F.R. part 300 *et seq.* ("IDEA"); N.J.A.C. 6A:14-1.1 *et seq.*; and N.J.S.A. 18A:46-1 *et seq.*  Plaintiffs also seek relief for violations of the Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq.* ("Section 504"); and the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. ("ADA").

10.  This complaint follows the April 14, 2011 final decision of

-3-

Administrative Law Judge Kelly J. Kirk ("ALJ") of the New Jersey Office of Administrative Law, captioned L.A. and A.A. o/b/o G.A. v. River Vale Board of Education, Docket No. EDS 11237-10, Agency Reference No. 2011-16342.

11. This Court has jurisdiction over the subject matter and the parties pursuant to 20 U.S.C. §1415(i)(3)(A), which grants jurisdiction over this matter "without regard to the amount in controversy."  20 U.S.C. §1415(i)(3)(A).

12. Jurisdiction is further predicated upon 28 U.S.C. §1331, which provides the district courts with original jurisdiction over all civil actions that arise under the laws of the United States.

13. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1391(b)(2).

## **ALLEGATIONS**

14. IDEA grants federal funds to NEW JERSEY to assist in the education of disabled children.  Receipt of those funds is dependent upon NEW JERSEY'S compliance with the requirements of IDEA, 20 U.S.C. §1411.  NEW JERSEY takes part in the federal program.  N.J.S.A. 18A:46-1 *et seq.*; N.J.A.C. 6A:14-1.1 *et seq.*

15. RVBOE receives federal funds for its programs and is mandated to comply with federal and state laws concerning the education of disabled children and the rights of their

parents.

16.  G.A. is a child with a disability as defined by 20 U.S.C. §1401(3)(A), and is entitled to a FAPE.

17.  A FAPE consists of special education and related services that are provided at public expense, meet state educational standards, are provided in an appropriate school within the state, and are provided in accordance with an Individualized Education Program ("IEP") developed for the child.  20 U.S.C. §1401(9).

18.  "An IEP is a detailed written statement arrived at by a multi-disciplinary team summarizing a child's abilities, outlining the goals for the child's education, and specifying the services the child will receive."  *L.J. v. Audubon Board of Ed.*, 2007 U.S. Dist. LEXIS 81527 (D.N.J. Nov. 5, 2007).

19.  The IDEA mandates parents are to be included as members of the IEP team, and equal participants in developing the IEP. 20 U.S.C. §1414(d)(1)(B); N.J.A.C. 6A:14-2.3(k).

20.  The IDEA mandates disabled children are to be educated in the least restrictive educational environment ("LRE").  20 U.S.C.A. §1412(a)(5); N.J.A.C. 6A:14-4.2.

21.  As an infant, G.A. received Early Intervention Services pursuant to Part C of IDEA; having been diagnosed at 11 weeks of age with torticollis, plagiocephaly and hypotonia.

The parents suspected speech delays, but were told he was too young to assess or qualify for speech-language services. G.A. was discharged from Early Intervention at age one; and denied services when later assessed for speech delays at age two.

22. During the 2009-2010 school year, GA attended a preschool program for two year olds at Temple Beth El ("TBE") in Closter, New Jersey.

23. During the 2009-2010 school year, TBE offered a speech screening to all students. As a result of the screening, G.A. was referred for further evaluation due to articulation errors.

24. In February 2010, a private speech assessment revealed the articulation errors resulted from ankyloglossia (literally translated 'tongue-tie') and G.A. was referred to an ENT for diagnostic evaluation.

25. In February 2010, an ENT confirmed ankyloglossia, speech delays, and also discovered a unilateral sensorineural (permanent-irreversible) hearing loss. The ENT recommended a frenulectomy (surgery), speech-language therapy, and referred G.A. to an audiologist for confirmation of the hearing loss.

26. On March 2, 2010, GA was seen by a pediatric audiologist who confirmed the diagnosis of unilateral sensorineural hearing loss, and recommended a hearing aid.

27. On March 4, 2010, L.A. referred G.A. to RVBOE requesting he be evaluated for special education and related services.

28. On March 4, 2010, DEGAETANO informed L.A. that G.A. could not receive the speech-language services he immediately required until the evaluation/classification process was completed, and that RVBOE had 90 days to complete same.

29. On March 4, 2010, DEGATANO advised L.A. that upon being classified, G.A. would be placed in the in-district three year old contained program.  A contained program means all enrolled children are disabled.

30. L.A. objected to a contained classroom and requested to see the program.

31. DEGAETANO advised L.A. she could not observe the program until the completion of the evaluation/classification process, which likely would not be completed prior to expiration of the school year.  As of March 4, 2010, there remained 111 calendar days in the school year.

32. On March 4, 2010, DEGAETANO advised L.A. that RVBOE would provide an FM system.

33. L.A. asked DEGAETANO what an FM system is, and DEGAETANO advised it is an assistive technology device that transmits the teachers voice through a microphone to a receiver that attaches to a hearing aid.

34. DETAETANO advised L.A. that an FM system could not be ordered until the parents first obtain a hearing aid because the frequency of the FM system must coincide with the frequency of the hearing aid.

35. DEGAETANO advised L.A. an FM system was not in the budget for the following year, and that L.A. should obtain a

hearing aid quickly so it could be ordered utilizing the current years budget.

36. On March 5, 2010, G.A. was seen by a different ENT for a second opinion. The parents were advised surgery is a last resort and that G.A. should receive speech-language therapy for three to six months to stretch the frenulum (connective tissue under the tongue) and alleviate the ankyloglossia (tongue-tie). A hearing aid and FM system were also recommended.

37. DEGAETANO had previously informed L.A. that RVBOE would not provide speech-language therapy services prior to completion of the classification process, and that the process would take three months if not longer; therefore L.A. secured private speech-language services to comply with the recommendations of the medical, audiological and speech-language professionals.

38. G.A. received private speech-language therapy twice per week for 45 minutes commencing March 5, 2010.

39. On March 10, 2010, RVBOE provided notice of a meeting to be held March 25, 2010 at which DEGAETANO and BEIERLE would be present.

40. On March 25, 2010, the meeting was convened to determine whether evaluation of G.A. was warranted, but neither DEGAETANO nor BEIERLE were present.

41. RVBOE offered to postpone the meeting to an unspecified date and time, which offer L.A. declined based upon RVBOE's advice that a delay in the meeting would result in a delay

in the eligibility/classification process which would her from observing the proposed program.

42. On March 25, 2010, it was determined and agreed evaluation of G.A. was warranted, but RVBOE did not request written consent to evaluate at that time.

43. After the meeting, and on March 25, 2010, DEGAETANO again advised L.A. the process may not be completed in time for her to observe the proposed program.  Thereupon, L.A. requested that G.A.'s treating therapist conduct the additional speech-language testing required since it could be done prior to conclusion of the school year, and DEGAETANO agreed but maintained RVBOE's other evaluations still may not be completed in time to permit observation of the program.  As of March 25, 2010, there remained 90 calendar days in the school year.

44. Two weeks later, and by letter dated April 8, 2010, RVBOE mailed the request for parental consent to evaluate G.A.

45. Throughout the evaluation process, and at every informal opportunity to do so, L.A. voiced objection to a contained program.

46. L.A. asked DEGAETANO if G.A. could receive related services absent a program altogether.  DEGAETANO admits to responding "absolutely not" and further stated that the only way RVBOE would provide services to G.A. was through its own in-district pre-school disabled program.

47. With no alternatives available, L.A. requested RVBOE consider its four year old integrated class believed to be

a less restrictive placement than the three year old contained program.  An integrated program means half the enrolled children are disabled and half are not.

48. On May 20, 2010, RVBOE conducted a physical therapy evaluation, which evaluation did not employ use of any standardized testing, such as the Peabody Gross Motor Development Scales.  While G.A. was delayed and in need of physical therapy services, but the abbreviated evaluation failed to determine the extent of G.A. needs.

49. On June 7, 2010, RVBOE conducted a psychological evaluation, which consisted of only a parent interview.  No formal testing was conducted of G.A. himself and no cognitive or intelligence tests were administered, such as the Wechsler Preschool and Primary Scale of Intelligence test.

50. On June 23, 2010 the school year concluded without the parents having had opportunity to observe the proposed placement.

51. On July 16, 2010, L.A. attended the eligibility meeting.

52. At the eligibility meeting, L.A. was for the first time provided with the physical therapy evaluation report.

53. At the meeting, BEIERLE advised L.A. that G.A. was eligible for special education and related services.

54. At the meeting, BEIERLE asked L.A. to sign consent that G.A. be classified pre-school disabled, which L.A. did.

55. At the meeting, BEIERLE asked L.A. to sign consent immediately proceed with an IEP meeting; which L.A. did.

56. BEIERLE then presented L.A. with an already prepared "draft"

IEP.

57.  The implementation date of the IEP was September 7, 2010.

58.  L.A. asked that the IEP include extended school year services for the immediate summer 2010.  BEIERLE refused to discuss or consider expended school year services.

59.  "Extended school year services" ("ESY") means special education and related services that are provided to a student with a disability beyond the normal school year in accordance with the student's IEP at no cost to the parent.

60.  L.A. asked that the IEP include individual speech therapy services three times per week as was recommended in the speech-language evaluation report.  BEIERLE refused stating that frequency of services could be later increased if deemed necessary, and the only way GA would receive individual speech therapy was if no-one else needed it.

61.  L.A. asked that an occupational therapy evaluation be conducted.  BEIERLE refused to order an evaluation at that time, stating one could be conducted during the next school year should it then be deemed necessary.

62.  L.A. asked that the IEP include mid-day transportation between the morning program at TBE and the afternoon program in River Vale.  BEIERLE refused, stating it was against school policy.  L.A. asked to see the policy, and was told to submit a formal request.  L.A. submitted the formal request and in response received a request for fifteen cents.  L.A. paid the fifteen cents, but was never provided the policy.

63.  BEIERLE next asked L.A. to sign the IEP.  L.A. refused, and the meeting concluded.

64.  On July 21, 2010, L.A. hand delivered a letter to BEIERLE to again request changes to the IEP, and included a request that RVBOE provide a hearing aid and an independent occupational therapy evaluation.

65.  On July 26, 2010, RVBOE hand delivered to L.A. a non-standard response letter, which letter was silent as to RVBOE's intentions with respect to the parental request for an independent occupational therapy evaluation.

66.  On July 26, 2010, RVBOE hand delivered to L.A. the proposed IEP, which was substantially similar to the "draft" IEP but for some corrections (i.e. removal of an incorrect statement that GA had a privately owned hearing aid, and the name of another child.)  None of the substantive changes L.A. had requested were incorporated therein.

67.  The parents declined to sign the IEP, and on August 9, 2010, filed a request for due process with the New Jersey Office of Special Education.  Plaintiffs incorporate by reference herein the entirety of the Parental Request for Due Process and the Supplemental Request for Due Process.

68.  Despite never having observed the program, L.A. requested interim public placement in the district proposed program pending outcome of the dispute.  RVBOE denied the request.

69.  RVBOE held a meet and greet for preschool students prior to start of the school year.  Plaintiffs were not invited to attend the meet and greet.

70. On October 21, 2010, the case was transmitted to the Office of Administrative Law.  The matter was heard on December 13, 2010, January 3, 2011, January 18, 2011, January 20, 2011, February 7, 2011, February 14, 2011, February 22, 2011 (conference call), March 2, 2011 (conference call), March 7, 2011, and March 21, 2011 (closing arguments by conference call).

71. The ALJ rendered a decision dated April 14, 2011 which denied Plaintiffs' petition for reimbursement of the hearing aid, audiological evaluations, 2010 summer program tuition, 2010/2011 preschool program tuition, independent occupational therapy evaluation, occupational therapy services, speech-language therapy services, transportation, compensatory education and compensatory related services; but awarded reimbursement of a speech-language evaluation and speech-language therapy services for June 2010 and July 2010; and further directed that the parties reconvene to create an IEP for 2009-2010 with placement being the in-district integrated program, and supplemented to include 45 minutes of occupational therapy once per week with all related services being provided individually or in a group not to exceed two students.

72. On May 4, 2011, a meeting was convened in an effort to comply with the ALJ's order.

73. L.A. asked that the IEP include ESY for summer 2011 and offered to obtain progress reports from his treating therapists who had testified G.A. requires ESY.

74. RVBOE refused to consider ESY and advised they would not consider any progress reports, that the only way ESY would be considered is if G.A. were immediately enrolled in the soon to conclude program.

75. L.A. asked whether the school audiologist is capable of conducting the periodic audiograms G.A. requires. DEGAETANO advised RVBOE does not have that capability. L.A. requested that the IEP include audiology services. RVBOE refused to provide audiology services.

76. L.A. asked that the IEP include occupational therapy goals since occupational therapy services were now included per the ALJ's order. DEGAETANO refused, stating that the ALJ did not specify any goals be included in the IEP.

77. L.A. asked that speech-language therapy services be provided in addition to, rather than during, the regularly scheduled class time as required by N.J.A.C. 6A:14-4.4. DEGAETANO refused, stating that the law requires only 10 hours of weekly instruction for preschoolers, and that since RVBOE's program provides 12 hours, RVBOE is not obligated to provide services outside of the regularly scheduled class time.

78. L.A. asked that cognitive and neurological evaluations be conducted. DEGAETANO refused, stating that G.A. is only entitled to evaluations that are related to his disability.

79. By letter dated May 4, 2011, L.A. memorialized various objections to the newly prepared IEP and again requested additional evaluations.

80. By letter dated May 12, 2011, RVBOE responded to plaintiffs

-14-

letter stating the ". . . the meeting on May 4, 2011 was solely for the purposes of revising the IEP to comport with the ALJ's decision."

81. Defendants have disregarded the ALJ's directive that the parties **create** an IEP incorporating certain specified changes required by the ALJ, instead using the decision to shield itself from its statutory obligations.

82. Defendants have violated Plaintiffs' rights under IDEA, 20 U.S.C. §1400 *et seq.*

83. Defendants have violated Plaintiffs' rights under Title 6A of the New Jersey Administrative Code.

84. Defendants have violated Plaintiffs' rights under Section 504 of the Rehabilitation Act of 1973.

85. Defendants have violated Plaintiffs' rights under due process clause of the 14th Amendment to the Constitution of the United States.

86. Defendants have violated Plaintiff G.A.'s right to a thorough and efficient education as guaranteed by the New Jersey Constitution.

## CAUSES OF ACTION

### COUNT I

### Procedural Violations

87. Plaintiffs repeat the allegations of paragraphs 1 through 86 as if fully set forth herein.

88. Both Congress and the Supreme Court place great importance on the procedural provisions incorporated into §1415.  See

*Hendrick Hudson Central School District Board of Education v. Rowley*, 458 U.S. 176, 102 S. Ct. 3034, 73 L. Ed. 2d. 690 (1982).

89. Courts have considered whether procedural violations standing on their own justify a finding that a FAPE has been denied, and they have reached a consistent result that procedural violations that deprive parents of meaningful opportunities to participate in decision-making and that deprive the student of educational opportunity constitute denials of FAPE. *See C.M. v. Bd. of Educ. of Union County Reg'l High Sch. Dist.*, 128 Fed. Appx 876, 881 (3d Cir. 2005)

90. RVBOE failed to convene a meeting of the child study team within 20 calendar days of the written request for initial evaluation of G.A. in violation of N.J.A.C. 6A:14-3.3(e).

91. RVBOE failed to obtain parental consent to evaluate G.A. without delay in violation of N.J.A.C. 6A:14-3.4(c)(1). RVBOE could have obtained the requisite consent at the March 25, 2010 meeting, but instead waited two weeks to first mail the request for written consent.

92. RVBOE failed to convene a meeting of the child study team to determine eligibility for services within 90 calendar days in violation of N.J.A.C. 6A:14-3.4(c).  The meeting was instead convened on July 16, 2010, 134 days after request for evaluation was made.

93. RVBOE failed to provide the physical therapy report to the parents ten days in advance of the eligibility meeting in violation of N.J.A.C. 6A:14-3.5(a); instead providing it at

the eligibility meeting.

94.  RVBOE failed to provide the proposed IEP to the parents within 90 calendar days in violation of N.J.A.C. 6A:14–3.4(c).  The proposed IEP was instead provided 144 days after request for evaluation.

95.  RVBOE failed to implement the proposed IEP within 90 calendar days in violation of N.J.A.C. 6A:14–3.4(c).  The implementation date was instead September 7, 2010, 188 days after the initial request for evaluation.

96.  RVBOE failed to have available a continuum of placements to meet GA's needs in violation of N.J.A.C. 6A:14–4.1; instead pre-determining placement, prior to conducting evaluations, in an in-district preschool disabled program.

97.  RVBOE failed to conduct sufficiently comprehensive evaluations to identify all of GA's special education and related services needs in violation of N.J.A.C. 6A:14–2.5. RVBOE conducted only perfunctory evaluations to give the appearance of having complied with the IDEA.

98.  RVBOE refused to allow parental observation of the proposed educational placement prior to implementation of the IEP in violation of N.J.A.C. 6A:14–4.1(k).  Defendants excluded G.A. from the classroom meet and greet prior to the start of school and expected Plaintiffs to consent to placement in the proposed program sight unseen.

99.  RVBOE systematically and unreasonable engaged in a pattern of delays that forestalled the parents opportunity to observe the proposed program and deprived Plaintiffs of

meaningful opportunity to participate in development of the IEP.

100. RVBOE failed to involve the parents as equal members of the child study team.

101. RVBOE came to the July 16, 2010 eligibility meeting with an already prepared IEP.  Courts have held this violation standing alone sufficient to hold FAPE was denied.

102. RVBOE failed in its obligation to explain why speech-language services provided in the IEP differed from services recommended in the evaluation reports upon which the IEP is based.

103. RVBOE failed in its statutory obligation to propose timely implementation the IEP within 90 days in violation of N.J.A.C. 6A:14-3.4(e).

104. RVBOE failed in its statutory obligation to consider ESY in violation of N.J.A.C. 6A:14-4.3(c).  ESY was necessary in order to implement the IEP within 90 days as required by statute; and based upon emerging skills at G.A. was at a critical age for development of speech and language.  A delay in services would result in irreparable harm.

105. G.A. had no prior IEP and did not have benefit of a "stay put" pending outcome of the dispute.

106. RVBOE failed to offer an interim public placement in violation of 34 CFR §300.518(b).

107. RVBOE failed to provide the requested and paid for transportation policy.

108. RVBOE failed in its statutory obligation to respond to the

parental request for an independent occupational therapy evaluation.

109. Defendants violated the procedures set forth in IDEA and the parallel New Jersey statute.

110. The aforesaid violations significantly impeded plaintiffs rights, resulted in loss of educational opportunity for G.A., and constitute a denial of FAPE.

**COUNT II**

**Least Restrictive Environment**

111. Plaintiffs repeat the allegations of paragraphs 1 through 110 as if fully set forth herein.

112. The right to FAPE includes the right to be educated in the Least Restrictive Environment.

113. IDEA requires that all children with disabilities must be educated in the Least Restrictive Environment ("LRE") that is appropriate for them.  The spirit of this requirement is to ensure that children are not unnecessarily removed from the regular classroom or isolated from other non-disabled children of their age.

114. IDEA also requires that schools provide a full continuum of services ranging from regular classrooms with support to special classes, and special school placements as needed.

115. Disabled children should be mainstreamed to the maximum extend appropriate and their removal from the regular education environment should occur only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services

cannot be achieved satisfactorily.  N.J.A.C. 6A:14-4.2.

116. The nature and severity of G.A.'s disability does not
     warrant placement outside the regular preschool classroom.

117. There was no age-appropriate "mainstream" public school
     placement option available in River Vale that RVBOE could
     offer.  However, RVBOE did offer its integrated preschool
     program attended by mostly four year olds.

118. The proposed placement was inappropriate because it is a
     "hybrid program" as defined by the Third Circuit in _T.R. v._
     _Kingwood Township Bd. of Educ._, 205 F.3d 572, 578 (3d Cir.
     2000), and is therefore not the LRE.  A hybrid program means
     the program cannot be classified either as a special
     education or a general education program because half of the
     children are disabled and half are not.

119. The proposed placement was inappropriate because it did not
     offer a peer group of typically developing three year olds.

120. The proposed placement was inappropriate because it offered
     a peer group of four year olds, half of whom were disabled.

121. Under the special education regulations preschool disabled
     children may be placed in private preschools to provide the
     opportunity for interaction with typically developing peers
     and the district's paraprofessionals may provide services in
     these private preschools.  N.J.A.C. 6A:14-4.3(c).

122. RVBOE failed to inform Plaintiffs that they could seek
     public funding for a private preschool placement.

123. RVBOE refused to consider programs other than its own in-
     district preschool disabled classes, failed in its

obligation to have a full continuum of alternative
placements available, and deprived G.A. of a FAPE.

124. The proposed placement was inappropriate because it employs
use of Rifton chairs for all enrolled children.

125. Rifton chairs by design, and in their most innocuous
version, are restrictive devices; and appropriately are not
used categorically throughout mainstream classrooms.

126. Use of a Rifton Chair is inappropriate for G.A.

127. The proposed program violates GA's constitutional right to
be free from unreasonable restraint.

128. RVBOE refused to provide the services GA required absent
attendance in an in-district preschool disabled program.

129. Defendants violated Plaintiffs rights under state and
federal laws and deprived G.A. of a FAPE in failing to offer
to educate him in the LRE.

### COUNT III

### Assistive Technology Devices and Services

130. Plaintiffs repeat the allegations of paragraphs 1 through
129 as if fully set forth herein.

131. The right to FAPE includes the right to have assistive
technology devices and services provided by the school
district whenever the technology is necessary for the
student to make meaningful educational progress, or to
ensure a student's placement in the LRE.  N.J.A.C. 6A:14-
3.7(c).

132. An assistive technology device means any item, piece of
equipment, or product system, whether acquired commercially

off the shelf, modified, or customized, that is used to
increase, maintain, or improve the functional capabilities
of children with disabilities, and an assistive technology
service means any service that directly assists a student
with a disability in the selection, acquisition, or use of
an assistive technology device.  N.J.A.C. 6A:14-1.3.

133. Audiology is a related service and includes selection and
fitting of an appropriate aid.  34 CFR §300.34(c)(1).

134. While IDEA specifically excludes a cochlear implant, it does
not exclude a hearing aid.

135. It is undisputed G.A. suffers from unilateral mild-moderate-
severe sensorineural hearing loss.

136. It is undisputed a hearing aid is recommended for G.A. by
his treating doctors, audiologists and therapists.

137. DEGAETANO and BEIERLE failed to advise Plaintiffs they may
seek public funding for the hearing aid, and instead
repeatedly pressed plaintiffs to obtain the hearing aid at
their own expense.

138. RVBOE did offer to provide an ear level FM system, but
stated it works in tandem with a hearing aid and could not
be ordered until a hearing aid is first obtained.

139. In an effort to compel Plaintiffs to obtain the necessary
hearing aid, DEGAETANO advised Plaintiffs an FM system was
not in the budget for the following year and needed to be
ordered as soon as possible to be included in the current
years budget.

140. By letter dated July 21, 2010, Plaintiffs requested RVBOE

provide a hearing aid.

141. Rather than provide the necessary hearing aid, RVBOE revoked its offer of an ear level FM system, replacing it with either a desk level or classroom wide speaker system, which options were never discussed with the parents or contemplated in the IEP; and are inappropriate for G.A. according to his audiologist.

142. Defendants violated Plaintiffs rights under state and federal laws and deprived G.A. of a FAPE by refusing to provide the necessary hearing aid and audiology services.

### COUNT IV

### Educational Benefit

143. Plaintiffs repeat the allegations of paragraphs 1 through 142 as if fully set forth herein.

144. The right to FAPE includes the right to have sufficiently comprehensive evaluations conducted to identify all areas of special education and related service needs, and to receive the necessary related services through the IEP to enable meaningful educational progress.  N.J.A.C. 6A:14-2.5.

145. RVBOE failed to conduct sufficiently comprehensive evaluations to identify all areas of special education and related service needs.  Both evaluations conducted by RVBOE were dismally deficient.

146. The psychological evaluation failed to include any testing of G.A. himself and consisted only of a parent interview; and despite concluding G.A. was delayed in daily living skills, no additional testing was recommended or conducted,

and the proposed IEP was devoid of goals to address those deficits.

147. G.A. is among the less than 5% of children who suffer from extreme separation anxiety.  RVBOE failed to conduct a functional behavioral evaluation, and defendants refused to include goals or accommodations in the IEP to address the issue.

148. Despite the proposed placement being the four year old integrated class, RVBOE failed to conduct a cognitive evaluation to determine whether G.A. at three could be appropriately placed with older children.

149. The physical therapy evaluation failed to employ use of any standardized testing, and a subsequent occupational therapy evaluation revealed significant gross motor delays and dyspraxia; which would have been discovered had a proper physical therapy assessment been conducted.

150. Despite G.A.'s need for assistive technology devices and services, RVBOE did not conduct an assistive technology evaluation and ignored the recommendations in the parent provided medical and audiological evaluations.

151. After plaintiffs requested RVBOE provide a hearing aid, defendants took the position G.A. did not require a hearing aid and a speaker FM system would be sufficient.

152. Despite G.A.'s need for speech-language therapy services, RVBOE did not conduct speech-language testing and ignored the recommendations in the parent provided evaluation.

153. G.A. was hearing impaired, tongue-tied, and at three years

of age could not benefit from speech therapy services twice per week for 30 minutes in a group of as many as five children, all of whom would be older than him.

154. Fearing GA would languish in a group of as many as five students, most if not all of whom were a year older than GA, Plaintiffs secured private speech therapy services, and sought reimbursement in the due process hearing.

155. The ALJ found GA requires speech-language services individually or in a group of no more than two students.

156. The right to FAPE includes the right to receive speech-language services in addition to, and not during, the regular instructional program.  N.J.A.C. 6A:14-4.4.

157. The proposed IEP offered speech-language services during and not in addition to the regular instructional program.

158. The IEP was not reasonably calculated to enable G.A. to receive educational benefit.

### COUNT V

### Extended School Year Services

159. Plaintiffs repeat the allegations of paragraphs 1 through 158 as if fully set forth herein.

160. The right to FAPE includes the right to have the school district evaluate the need for ESY services correctly and fairly.

161. G.A. required ESY services for the summer 2010.

162. RVBOE failed and refused to consider ESY for summer 2010.

163. The September 7, 2010 IEP implementation date meant G.A. would wait six months to receive special education and/or

related services.

164. G.A. was denied his statutory right to have an IEP implemented within 90 days, which would necessarily have been in the form of ESY since the school year had ended before GA was classified.

165. Defendants failure to offer timely implementation of the IEP deprived G.A. of educational opportunity, and is alone sufficient basis to find G.A. was denied a FAPE.

166. G.A. requires ESY services for the summer 2011.

167. RVBOE refused to consider G.A.'s need for ESY services for summer 2011 despite having testified ESY services could not be contemplated a full year in advance and would be considered at a later date during the year.

168. RVBOE refused to accept progress reports from G.A.'s treating therapists in determining the need for summer 2011 ESY services.

169. Defendants violated Plaintiffs rights under state and federal laws and deprived G.A. of a FAPE in refusing to provide ESY services.

**Count VI**

**Independent Evaluation**

170. Plaintiffs repeat the allegations of paragraphs 1 through 169 as if fully set forth herein.

171. Evaluations are among the services necessary for the preparation of an IEP, and when there is disagreement with the school district relative to an evaluation, a parent may request an independent evaluation.  N.J.A.C. 6A:14-2.5(c).

172. At the July 16, 2010 IEP meeting, L.A. requested an occupational therapy evaluation.

173. RVBOE declined to conduct the evaluation, but advised it could be conducted once GA started the program in September if it were then deemed necessary.

174. By letter dated July 21, 2010, L.A. requested an independent occupational therapy evaluation.

175. RVBOE violated the procedures set forth in N.J.A.C. 6A:14–2.5(c)(1) by failing either to notify the parents in writing within ten days of its intent to itself conduct the requested evaluation, or to initiate a due process hearing within twenty days to prove the requested evaluation is not warranted.

176. Plaintiffs obtained an independent occupational therapy evaluation and sought reimbursement at the due process hearing, which request was denied.

177. Defendants violated Plaintiffs rights under federal and state law and deprived G.A. of a FAPE.

**COUNT V11**

**Reversible Error**

178. Plaintiffs repeat the allegations of paragraphs 1 through 177 as if fully set forth herein.

179. A court's inquiry in suits brought under §1415(e)(2) is twofold.  First, has the state complied with the procedures set forth in the Act?  And second, is the IEP developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?  See *Rowley*.

180. The ALJ committed reversible error in failing to address or consider whether the procedural violations, either individually or taken together, resulted in loss of educational opportunity and constitute denial of a FAPE.

181. While the ALJ acknowledged RVBOE was delinquent in timely convening the initial evaluation meeting, delinquent in timely convening the eligibility/IEP meeting, and delinquent in timely providing the parents with the proposed IEP; the decision was silent as to defendants many other procedural violations including, failure to implement the IEP within 90 days (implementation date was 187 days post referral), predetermining the IEP, failure to allow observation of the proposed program, failure to involve the parents as members of the IEP team, failure to have available a continuum of placements, failure to consider ESY, failure to conduct comprehensive evaluations, failure to respond to a parental request for independent evaluation, and failure to offer an interim public placement pending outcome of the dispute.

182. Several of the procedural violations alone warrant a finding FAPE was denied; taken together the violations are nothing short of egregious.

183. The ALJ committed reversible error in failing to address or consider whether the IEP, despite not having been developed through the Act's procedures, was reasonably calculated to enable G.A. to receive educational benefits.

184. The ALJ committed reversible error in wholly failing to consider whether the proposed placement was the LRE

appropriate for G.A.

185. The ALJ committed reversible error in failing to acknowledge that the proposed program is a hybrid program, and failed to evaluate whether G.A. required this more restrictive placement.

186. The ALJ committed reversible error in failing to acknowledge that the proposed program employs use of Rifton chairs, and failed to evaluate whether categoric use of Rifton chair chairs render the placement too restrictive for G.A.  Rifton Chairs are specialized chairs for the disabled that are restrictive by design, having table level arms and flared legs.  In some cases, courts have held use of Rifton Chairs violate the constitutional right to be free from unreasonable restraint.

187. The ALJ committed reversible error in excluding evidence relative to Rifton Chairs.

188. The ALJ erred in failing to analyze or address Defendants failure to consider a continuum of placements in developing the IEP, including placement in a general education program in a typical preschool.

189. The ALJ committed reversible error in determining the proposed placement was appropriate, and simultaneously ordering the parties reconvene to create an IEP.  It is fundamental that placement cannot be determined prior to development of the IEP.

190. The ALJ committed reversible error in determining the proposed IEP offered a FAPE absent provision of a hearing

aid.

191. The ALJ committed reversible error in determining GA requires a hearing aid, but that RVBOE is not obligated to provide it.

192. Audiology is a related service and includes selection and fitting of an appropriate aid.  34 CFR §300.34(c)(1).

193. The ALJ committed reversible error in determining that an "appropriate aid" does not include a hearing aid.

194. The ALJ erred in determining a desk level speaker unit is alone sufficient to meet G.A.'s hearing needs.

195. The ALJ committed reversible error in determining the proposed IEP offered a FAPE absent necessary periodic audiograms.

196. As a matter of law, the ALJ erred in determining a FAPE was offered while simultaneously ordering RVBOE to revise (some 8 months later) therapy services to be provided individually or in a small group not exceeding two students.  The ordered revision necessitates a finding that the proposed IEP was inappropriate, and thus FAPE was denied.

197. The ALJ applied the wrong legal standard and committed reversible error in accepting defendants testimony that the group size would "probably have been only two or three students."  In determining the appropriateness of the IEP, The ALJ erred in failing to focus inquiry on the IEP actually offered rather than the one it could have offered. _Lascari v. Ramapo Indian Hills Regional School District_, 116 N.J. 30, 46-47 (1989).

198. The ALJ erred in failing to address or consider that the proposed IEP was deficient and violates <u>N.J.A.C.</u> 6A:14-4.4 because G.A. would be removed from the regular instructional program to receive speech-language services, rather than receiving these services in addition to the regular instructional program.

199. The ALJ committed reversible error in failing to determine FAPE was denied, but awarding partial reimbursement and requiring substantive revision of the IEP.

200. The ALJ committed reversible error in failing to determine G.A. was entitled to ESY services for summer 2010.

201. The ALJ apparently agreed the proposed IEP should have offered these services having awarded reimbursement of speech-language services for June 2010 and July 2010, but erred in not finding Defendant's substantive failure to provide ESY services thereby denied G.A. a FAPE.

202. A public agency may not limit ESY services to particular categories of disability, or unilaterally limit the type, amount, or duration of those services.  *See* 34 CFR §300.309(a)(3).

203. The ALJ erred in limiting reimbursement to speech-language therapy for June and July; reimbursement should also have been awarded for summer audiology services, transportation, and program.

204. The ALJ erred in failing to address or consider whether Defendants failure to conduct evaluations sufficiently comprehensive to identify all education and related service

needs resulted in denial of FAPE.

205. The ALJ found G.A. requires occupational therapy services, and directed the parties to create a new IEP including this related service; but erred in failing to find G.A. was denied a FAPE.

206. The ALJ erred as a matter of law with respect to reimbursement of the independent Occupational Therapy Evaluation.

207. As a matter of law, the ALJ erred in finding that Plaintiffs filing a due process petition obviates Defendant's obligation to comply with the statutory directives regarding e parental request for independent evaluation.

208. Even if such a holding were sound, the ALJ erred in determining the district had 20 days to provide written response to a parental request for an independent evaluation rather than 10 days.  The law allows 20 days for a district to initiate a due process hearing to quash such a request, but only 10 days to advise parents whether it will elect to itself conduct the requested evaluation.

209. As a matter of law, the ALJ erred in determining the filing of a parental request for due process deprived RVBOE of meaningful opportunity to conduct an occupational therapy evaluation.

210. The ALJ applied the wrong legal standards, and wholly failed to address or consider many issues in the case.

211. The ALJ erred in determining the facts, and assumed facts not in evidence.

212. The ALJ's decision was not regularly made.

213. The ALJ erred in disallowing G.A.'s grandfather to assist as an advocate at the due process hearing.

214. The ALJ excluded from evidence the most recently conducted state monitoring report which revealed a history and pattern of IDEA violations.

215. The ALJ excluded testimony and documentary evidence pertaining to the resolution meeting.

216. The ALJ refused plaintiffs submission of a motion for summary decision upon defendant resting its case.

217. Plaintiffs incurred substantial expert witness fees in putting on a case that could properly have been decided on the motion.

218. The ALJ refused to admit into evidence the occupational therapy evaluation unless the doctor who conducted the evaluation testified at trial.  Plaintiffs incurred substantial expert witness fees in order that the report be admitted.

219. The ALJ permitted Defendant a windfall by not requiring Defendant to belatedly pay expenses which it should properly have paid under state and federal law.  Defendant has been unjustly enriched.

220. The ALJ erred in failing to award Plaintiffs "prevailing party status" and characterizing Plaintiffs petition as DENIED, despite the awarding reimbursement for speech-language testing and speech therapy services rendered in June & July 2010 and ordering creation of a new IEP

requiring substantive changes regarding provision of related services.

221. The ALJ applied the wrong legal standard relative to provision of transportation.

222. The ALJ's decision was not regularly made.  The ALJ erred in sustaining Defendants' many trial objections, which excluded relevant testimony and documentary evidence, prevented L.A.'s use of the New Jersey Administrative Code to refresh recollection in answering questions on cross examination, and deprived Plaintiffs of their right due process by refusing to accept a written motion for summary decision after Defendant rested its case.  The ALJ also erred in refusing to sequester DEGEATANO during testimony of other witnesses for the defense.

223. The audio recordings of the hearing reflect the aforesaid irregularities, and further reveal objections made only after a RVBOE witness were asked pointed questions followed by long pauses punctuated by an objection to avoid answering the question, which the ALJ improperly sustained.  The ALJ also overruled plaintiffs objections to attacking its expert witness based on a HIPPA violation, which assertion was absurd.

224. The decision is reasoned on an erroneous determination of facts which are not supported by the record.

225. The decision of the ALJ is not supported by applicable law, and is arbitrary and capricious.

**COUNT VIII**

–34–

**Parental Damages**

226. Plaintiffs repeats the allegations of paragraphs 1 through 225 as if fully set forth herein.

227. IDEA includes specific rights for parents or legal guardians of children with disabilities.  Parent rights are procedural safeguards for special education programs.

228. Defendants systematically and intentionally delayed the eligibility and classification process to prevent observation of the proposed program.

229. The ALJ found RVBOE was delinquent in timely holding the evaluation meeting, delinquent in timely classifying GA, and delinquent in timely providing GA's parents with a proposed IEP, however, the decision was silent as the significance of these and other violations as relates to the parents right to meaningfully participate in development of the IEP.

230. Defendants deprived the parents of their statutory right to observe the proposed program or other program options.

231. Defendants deprived the parents of their statutory right to review all evaluation reports in advance of the eligibility meeting.

232. Plaintiffs were deprived of their statutory right to have an independent occupational therapy evaluation at public expense.

233. Plaintiffs were deprived of their statutory right to participate development of the IEP.

234. Defendants failed to inform plaintiffs of their right to seek public funding for a private preschool program.

235. Defendants failed to inform plaintiffs of their right to seek public funding for assistive technology devices and services.

236. Defendants pre-determined placement in an in-district program prior to development of an IEP, and prior to conducting any evaluations.

237. BEIERLE came to the eligibility meeting with an already prepared pre-determined IEP; BEIERLE testified this is standard operating procedure.  That defendants violate the rights of all parents cannot serve as justification to violate the rights of G.A.'s parents.

238. Defendants intentionally draft vague IEPs enabling them to later re-interpret the provisions as they see fit.

239. The aforesaid violations resulted in gross violations of parental rights and plaintiffs are entitled to compensatory damages.

240. Defendants actions were and continue to be abusive toward plaintiffs.

241. Despite the ALJ's April 14, 2011 order that the parties meet to create an IEP for the 2010-2011 school, RVBOE relies upon the verbiage of the decision in refusing to create an IEP with the parents as participants, and has instead used it as a weapon to continue to mis-treat G.A.'s parents and deprive them of their rights.

242. RVBOE refused to include occupational therapy goals in the new IEP despite the ALJ's ruling that occupational therapy services be provided.

243. RVBOE refused to conduct a cognitive test or a diagnostic neurological evaluation, despite the occupational therapy evaluation report indicating G.A. suffers from the neurological condition dyspraxia.

244. Defendants refused to include audiology services despite G.A.'s need for periodic audiograms.

245. Defendants refuse to allow independent cognitive or neurological evaluations at public expense.

246. Plaintiff L.A. has suffered emotional distress as a result of defendants actions, wether those action be negligent or intentional.

247. Acting under color of law, Defendants DEGAETANO and BEIERLE have deprived Plaintiffs of their rights under state and federal law.

248. Defendants violated Plaintiffs rights under IDEA, the NJ parallel statute, and section 1983.

249. The Supreme Court of the United States has held that the importance of the procedures set forth in IDEA cannot be gainsaid.  The Third Circuit has held damages are not available under section 1983 in IDEA cases because the IDEA provides a comprehensive scheme; however, regardless of how comprehensive that scheme may be, it is of no value when NEW JERSEY fails or refuses to enforce the statute.

250. NEW JERSEY has encouraged and empowered school districts to violate the IDEA.

251. NEW JERSEY violated IDEA by removing from it's parallel statute the procedural safeguard regarding a students

interim public placement when the disputed IEP involves initial entry into public school.

252. NEW JERSEY failed to render a decision within 45 days after conclusion of the resolution period.

253. NEW JERSEY failed to enforce the IDEA and its own parallel statute.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court:

(A) Order the preparation and filing of the administrative record, as necessary;

(B) Receive and consider the audio CD's of the record of the administrative hearing;

(C) Receive and consider the submission of additional evidence to supplement the administrative record;

(D) Award tuition reimbursement for the pendency placement at TBE;

(E) Award reimbursement of Plaintiffs' education, evaluation, related service, transportation, and assistive technology device and service expenses incurred with respect to providing GA with private educational placement and related services during summer 2010, the 2010-2011 school year, and summer 2011;

(F) Award to Plaintiff G.A. compensatory education and related services;

(G) Direct RVBOE to place G.A. in a regular education preschool program for the 2011-2012 school year;

(H)   Issue a declaratory judgment that Defendants have violated Plaintiffs' rights as set forth;

(I)   Award to the Plaintiffs costs, expenses, expert witness fees and attorneys' fees incurred in litigating the administrative proceeding pursuant to 20 U.S.C. §1415;

(J)   Award to the Plaintiffs L.A. and A.A. compensatory damages pursuant to IDEA and/or 42 U.S.C. §1983.

(K)   Award to the Plaintiff L.A. damages for intentional infliction of emotional distress;

(L)   Award to the Plaintiff L.A. damages for negligent infliction of emotional distress;

(M)   Award to the Plaintiffs punitive damages;

(N)   Award Plaintiffs costs, expenses and attorneys' fees, including pre-judgment and post-judgment interest, incurred in connection with litigating this action, pursuant to 20 U.S.C. §1415; and

(O)   Award Plaintiffs all such other and further relief as the Court deems just and proper.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury of all issues so triable.

Dated:   June 30, 2011                   Respectfully submitted:

                                         s/ Lori E. Arons
                                         Lori E. Arons, Esq.
                                         One University Plaza, Ste 514
                                         Hackensack, NJ 07601
                                         Loriarons@aol.com
                                         201-388-9533
                                         *Counsel for Plaintiffs*
                                         G.A., L.A. and A.A.

## **VERIFICATION AND CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I hereby certify that, to the best of my knowledge, information and belief formed after a reasonable inquiry, this action is not be presented for any improper purpose; the claims, defenses and other legal contentions are warranted by existing law; and the allegations and factual contentions have evidentiary support.

s/ Lori E. Arons
Lori E. Arons, Esq.

I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative proceeding.

s/ Lori E. Arons
Lori E. Arons, Esq.